UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

GAETANO "TOM" ALIOTO,

              Plaintiff,

v.                                                      Case No. 08-CV-752

TOWN OF LISBON,
TERRY MARTORANO, and
JEFFREY MUSCHE,

              Defendants.

_____

## ORDER

Plaintiff Gaetano "Tom" Alioto ("Alioto") seeks leave of the court to file an amended complaint in this action. Alioto filed the request and the proposed amended complaint in response to motions to dismiss filed by defendants Terry Martorano ("Martorano"), Jeffrey Musche ("Musche"), and the Town of Lisbon ("the Town"). The defendants oppose Alioto's motion and argue that Alioto fails to establish "good cause" for the amendment and that amending the complaint would be futile because the asserted claims would not survive a motion to dismiss. Based on the reasoning set forth below, the court will deny Alioto's motion to file an amended complaint and will grant the defendants' motion to dismiss.

## BACKGROUND

Alioto initially filed this action in state court, however, it was removed to federal court on September 4, 2008. Alioto's suit arises from his employment as a sergeant for the Town of Lisbon Police Department and the actions of defendant Martorano,

the Town of Lisbon Chief of Police, and defendant Musche, the Town Administrator. Alioto alleges that during his work for the Town police department, he instituted an investigation into whether defendant Martorano was falsifying his time sheets to indicate that Martorano was on duty for the Town when he was actually working a second job as a security guard, essentially "double-dipping." Alioto further alleges that in retaliation for his role in the investigation, Martorano and Musche subjected Alioto to a campaign of harassment intended to make Alioto quit his job. On the basis of these actions by the defendants, Alioto alleged claims pursuant to 42 U.S.C. § 1983, as well as a number of state law tort claims.

This court issued a scheduling order for the case specifying November 30, 2008, as the deadline for amendment of the pleadings without formal leave. (Order dated October 24, 2008, Dk# 22). The deadline passed, and on June 1, 2009, the defendants filed motions to dismiss based on the claims appearing within the original complaint. Instead of filing an independent response brief, Alioto filed a motion requesting leave of the court to file an amended complaint. Alioto's amended complaint withdraws his state law claims and purports to state only § 1983 claims. Specifically, Alioto's amended complaint alleges that the defendants violated his due process rights, his property rights in his wages and paid medical leave, and his freedom of association rights.

**ANALYSIS**

**I.      Motion to File Amended Complaint**

Alioto asks that the court grant him leave to file an amended complaint in lieu of responding to the defendants' motions to dismiss. When a plaintiff seeks to amend his pleading after expiration of the trial court's scheduling order deadline, as Alioto seeks to do here, he must show "good cause." *Trustmark Ins. Co. v. General & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (citing Fed. R. Civ. P. 16(b)). The court primarily considers "the diligence of the party seeking amendment" in making this "good cause" determination. *Id.* A failure to add a claim in a timely manner, despite being previously aware of the underlying facts, may indicate a lack of "good cause" to amend the complaint. *See id.*

Alioto does not address "good cause" in his initial motion for leave to amend. However, Alioto argues in his reply brief that good cause exists for two reasons: 1) because his amended complaint streamlines the litigation by reducing the number of claims; and 2) because the defendants caused Alioto's delay in seeking leave to amend because they did not challenge the sufficiency of his complaint earlier in the proceedings. As Alioto suggests, his amended complaint reduces the number of claims alleged and may limit the potential scope of discovery. While the court always welcomes the voluntary elimination of claims, Alioto's choice to do so does not impact the court's evaluation of his diligence in seeking amendment. Alioto provides no explanation for why he could not seek amendment earlier in the

proceedings, particularly when the facts underlying his newly-added claims were available at the time he filed the initial complaint.

The court likens the claims contained in Alioto's amended complaint to the addition of new claims. Though he labeled the second section of his original complaint "Violation of 42 U.S.C. § 1983 Constitutional Rights," he failed to assert any particular constitutional violation. Thus, the defendants were left to guess at the bases for his § 1983 claims. Only now, in his proposed amended complaint, does Alioto assert the violation of his due process, property, and freedom of association rights. Alioto previously possessed the facts underlying these alleged constitutional violations, but he did not timely add these "new" § 1983 claims. This demonstrates a lack of diligence in pursuing amendment of his complaint and undermines his assertion of "good cause."

Alioto further argues that he did not know the defendants would file a motion to dismiss his claims until six months after the deadline for amending the pleadings had passed. Thus, Alioto concludes, he is not entirely to blame for the delay in seeking amendment. However, this argument is unconvincing. The defendants had no duty to advise Alioto that they believed his complaint inadequate *prior* to filing their motions to dismiss. Further, the defendants' actions did not impact Alioto's decision to add claims for newly-asserted constitutional violations nearly a year after filing his action. Alioto's lack of diligence in adding new claims or revising his § 1983 claims cannot be deflected to the defendants.

-4-

The court finds that Alioto lacks "good cause" for amending his complaint more than six months beyond the scheduling order deadline. Alioto made no attempt to add or re-plead claims until after the defendants filed motions to dismiss and he was required to respond to the alleged deficiencies in his original complaint. His delayed and reactive request for amendment undermines any argument that Alioto "diligently" pursued amendment of his complaint.

Further, even if good cause existed, the court would deny leave to file an amended complaint because such amendment is futile. The claims that Alioto asserts in his amended complaint would not survive a motion to dismiss. An amendment may be denied as futile if its claims would not withstand a Rule 12(b)(6) challenge. *See Vargas-Harrison v. Racine Unified Sch Dist.*, 272 F.3d 964, 974 (7th Cir. 2001). Alioto's proposed amended complaint asserts § 1983 claims alleging that the defendants violated his due process rights when they constructively suspended or discharged him, violated his constitutionally-protected property rights when they denied him overtime wages and paid medical leave, and violated his First Amendment freedom of association rights by pressuring others not to support him. Each of his claims fails under the Rule 12(b)(6) standard.

### a. Constructive Suspension and Discharge

Alioto first argues in his proposed amended complaint that he was deprived of the protected property interest in his position as police sergeant without the due process required by Wis. Stat. § 62.13. The statute addresses the manner in which

a board of police and fire commissioners may suspend, reduce in rank, or remove subordinates, such as police officers. *See* Wis. Stat. § 62.13(5). A violation of § 1983 occurs when: 1) the offending conduct was committed by a party acting under the color of state law; 2) the conduct deprived the plaintiff of a constitutionally protected property interest; and 3) the alleged deprivation occurred without due process of law. *Germano v. Winnebago County*, 403 F.3d 926, 927 (7th Cir. 2005).

However, Alioto fails to establish that he was deprived of due process embodied in the statute. Alioto argues that he was constructively suspended without proper process when he was not allowed to return to work after taking medical leave and prior to the disbanding of the Town police department. Alioto originally took medical leave on the advice of his physician and psychiatrist in October 2006, and his leave was later extended until May 2007. (Am. Compl. ¶¶ 27-28, 36). Prior to returning to work, the Town required Alioto to obtain a detailed medical release and submit to a fitness for duty evaluation. (Id. at ¶ 36). Alioto participated in the requested evaluation and was deemed unfit to return to duty. (Id.). Thus, Alioto was first on medical leave he initiated and then was unable to return to work after failing a fitness evaluation.

The court is skeptical that these events constitute a disciplinary "suspension" triggering the process required under the statute. Medical leave is not the equivalent of a suspension. Further, even if Alioto's inability to return to work after providing an inadequate medical release and failing a fitness for duty evaluation can be deemed

a suspension, Alioto was not deprived of the due process embodied in Wis. Stat. § 62.13. Under the statute, the chief of police may suspend a subordinate officer for just cause without a hearing, unless a hearing is requested by the suspended officer. Wis. Stat. § 62.13(5)(c).[1] Alioto does not allege that he ever requested a hearing. Since Alioto did not pursue the "process" available to him under the statute, the defendants did not violate his due process rights. *See Cliff v. Board of School Com'rs of City of Indianapolis*, 42 F.3d 403, 414 (7th Cir. 1994). Thus, Alioto fails to establish that he was suspended without due process.

Alternatively, Alioto argues that he was "constructively discharged" without due process either when he was labeled "unfit for duty" by the Town's psychiatrist or when the Town police department was ultimately disbanded. (Am. Compl. 36). However, Alioto does not establish that his employment was ever terminated. Constructive discharge generally refers to a plaintiff's resignation because of duress or working conditions so intolerable that a reasonable employee would feel compelled to quit. *See e.g. Roby v. CWI, Inc.*, 579 F.3d 779, 785 (7th Cir. 2009); *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007); *Lifton v. Board of Educ. of City of Chicago*, 416 F.3d 571, 578 (7th Cir. 2005). Alioto does not assert that he resigned his officer position. To the contrary, Alioto avers that he was ready and willing to resume his position, but that he was "never allowed to

---

[1]The statute reads in relevant part:

> (c) A subordinate may be suspended for just cause, as described in par. (em), by the chief or the board as a penalty...No hearing on such suspension shall be held unless requested by the suspended subordinate.

-7-

return to work for the Town police department." (Am. Compl. ¶ 36). Alioto also states that was employed by the Town as a police sergeant at "all times material hereto" in his amended complaint. (Am. Compl. ¶ 10). The fact that Alioto was deemed "unfit for duty" and had not been cleared to return to work does not establish that he was discharged.

Alioto does not allege that he quit his position, nor does he allege that he was officially terminated by the police department. Therefore, Alioto was not effectively discharged until the police department disbanded on December 31, 2007. (Am. Compl. ¶ 36). However, Alioto does not allege that the dissolution of the department – which resulted in his actual termination – was executed without the required process. Thus, Alioto cannot establish that he was constructively discharged without due process.

### b. Overtime Wages and Paid Medical Leave

Alioto also argues that the defendants violated his protected property rights to his wages by refusing him pay for overtime hours and for refusing paid medical leave. Constitutionally-protected property interests are created and defined by an independent source, such as a contract or state statute. *Miyler v. Village of East Galesburg*, 512 F.3d 896, 898 (7th Cir. 2008). However, Alioto fails to establish that he was deprived of a protected property interest created by such a source.

Alioto argues that Wis. Stat. § 612.13(7n) creates his protected right to receive unpaid overtime wages. However, the statute states that it applies to 2nd, 3rd or 4th

-8-

class cities, and not to other municipalities such as the Town. Further, Wis. Stat. § 612.13(7n) creates an entitlement to compensatory time for overtime worked, and does not establish a right to overtime wages. The statute reads in relevant part:

> **(7n) Hours of labor.** Except when a labor agreement under subch. IV of ch. 111 that governs hours of employment exists, the council of every 2nd, 3rd or 4th class city shall provide for a working day of not more than 8 hours in each 24 except in cases of positive necessity by some sudden and serious emergency, which, in the judgment of the chief of police, demands that such workday shall be extended beyond the 8-hour period at such time; and, when such emergency ceases to exist, all overtime given during such emergency shall be placed to the credit of such police officer, and compensatory time under s. 103.025 given therefor.

Wis. Stat. § 62.13(7n). Thus, Alioto does not establish a protected property right and his claim for overtime wages would not withstand a Rule 12(b)(6) challenge.

Similarly, Alioto's amended complaint fails to state a claim for paid medical leave. He asserts no independent source for such a protected right. A property interest does not exist merely because a plaintiff has a unilateral expectation or abstract desire for one. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Thus, Alioto's assertion that the defendants violated his "clearly established property rights in his wages" by refusing his request for paid medical leave is insufficient. (*See* Am. Compl. ¶ 50). Alioto fails to state a valid § 1983 claim on this basis.

### c. Freedom of Association

Finally, Alioto asserts that the defendants violated his First Amendment right to freedom of association. He argues that a Town police officer was threatened with a criminal investigation if he "supported or defended Alioto." (Am. Compl. ¶ 44).

-9-

Alioto also asserts that a Town Supervisor was threatened with criminal charges because of his role in the investigation of Martorano. (Am. Compl. ¶ 45). Alioto apparently concludes that the inability of others to "support or defend" him or to investigate Martorano violated *his* freedom of association. However, Alioto's claim cannot withstand challenge under Rule 12(b)(6).

The protected right to freedom of association has two categories: 1) freedom to maintain intimate human relations, such as marriage, procreation, education of one's children and cohabitation; and 2) the right to associate to engage in First Amendment protected activities, such as speech, assembly, petition for redress or grievances and the exercise of religion. *Marshall v. Allen*, 984 F.2d 787, 799 (7th Cir. 1993) (citing *Roberts v. United States Jaycees*, 468 U.S. 609 (1984)). Alioto does not assert an intimate relationship corresponding to the first category. Instead, Alioto relies upon the second category regarding the right to associate in order to engage in speech. He argues that his right to associate with the Town police officer and Town Supervisor regarding a matter of public concern – Alioto's investigation into Martorano's falsification of time sheets – was violated by threats made to those individuals.

However, Alioto does not establish a violation of his own right to associate. He argues that other individuals were threatened with criminal charges or investigation for speaking on a matter of public concern, which lead them to resign. While these actions may impact the rights of the *other* individuals, they do not

-10-

directly effect Alioto or implicate any adverse action against him by the defendants. Further, it is difficult to see what "associational conduct" Alioto alleges. The fact that the unidentified police officer made statements in support of Alioto's actions or that the Town Supervisor participated in the investigation of Martorano's time sheets does not create an "association" in the conventional sense of individuals coming together to collectively express or promote common political, social, economic, educational, religious, or cultural concerns. *See Marshall*, 984 F.2d at 800. Alioto's amended complaint does not establish the violation of First Amendment rights and his § 1983 claim fails.

## II.  Motions to Dismiss

The court concluded above that Alioto lacks "good cause" to file his amended complaint and that such amendment would be futile. Thus, Alioto is left with the claims asserted in his original complaint. He also faces the defendants' pending motions to dismiss that complaint, which the court will now address.

Alioto filed a request to amend his complaint instead of addressing the defendants' motions to dismiss. Thus, he has made no response to their arguments and forfeits his opportunity to do so. *See Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (Failure to oppose an argument permits an inference of acquiescence and "acquiescence operates as a waiver."); *Central States, Southeast & Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir. 1999) ("Arguments not developed in any meaningful way

-11-

are waived."). Additionally, Alioto's claims cannot survive because they fail under a Rule 12(b)(6) standard.

Alioto's original complaint sets forth his claims under a title reading: "Cause of Actions [sic] Relative to Violation of 42 U.S.C. § 1983 Constitutional Rights." (Compl. at 1). However, immediately thereafter, Alioto labels his claims as follows: "intentional infliction of emotional distress, harassment, retaliation, whistleblowing retaliation, conspiracy, discrimination, defamation, condoning a hostile work environment and wrongful interference with contractual rights regarding employment." (Id.). As an initial matter, Alioto implicitly concedes that the majority of claims in his original complaint fail under Rule 12(b)(6) because he eliminates them from his proposed amended complaint. In seeking to file an amended complaint, Alioto jettisoned all of the aforementioned, specific claims and retained only § 1983 claims with newly-asserted constitutional bases.

Alioto's attempt to pare down his complaint was well-founded. Indeed, Alioto's original complaint fails to adequately establish any of his asserted claims. First, he does not plead any constitutional or statutory basis for his § 1983 claims. To state a claim under § 1983, Alioto must establish both that the defendants were acting under color of state law, and that the conduct violated a right secured by the Constitution or federal law. *Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001). Therefore, he must articulate the violation of a protected constitutional or statutory

right to state a § 1983 claim. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*. Alioto fails to plead the violation of any such right.

Alioto's § 1983 claims also fail for additional and independent reasons. First, Alioto cannot maintain a § 1983 claim against the Town because he failed to allege a violation of official municipal policy. Municipalities and other local government units are subject to § 1983 suits; however, they are only responsible for deprivation of rights pursuant to their own policies and customs, and are not otherwise answerable for the torts of their employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Therefore, to establish the liability of a municipality under § 1983, a plaintiff must show that a municipal policy or custom caused his injury. *Abbott v. Village of Winthrop Harbor*, 205 F.3d 976, 981 (7th Cir. 2000). Alioto does not allege any Town policy or custom leading to his injuries.

Second, Alioto cannot maintain a § 1983 claim against Martorano or Musche because of qualified immunity. Qualified immunity shields public officials from § 1983 liability when they act in a manner reasonably believed to be lawful. *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). The doctrine arises from the idea that few people will enter public service if this service subjects them to the risk of personal liability for one's official decisions. *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Qualified immunity allows "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). When

-13-

determining whether qualified immunity applies, the court considers whether the facts show that the officer's conduct violated a constitutional right, and whether the right was clearly-established at the time. *Nanda v. Moss*, 412 F.3d 836, 841 (7th Cir. 2005). However, Alioto does not allege any particular constitutional violation and fails to establish that the actions of either Martorano or Musche were unconstitutional under clearly-established law. It is Alioto's burden to defeat the affirmative defense of qualified immunity once it is raised. *See Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008). However, Alioto never countered the defense and his § 1983 claims against Martorano and Musche fail.

Alioto's state law claims are similarly inadequate to survive the defendants' motions to dismiss. Alioto failed to provide the Town with the notice required by state law. Wisconsin law requires that a plaintiff serve notices on governmental entities and their officials or employees before filing a lawsuit against them. Wis. Stat. § 893.80(1). The statutory requirements are twofold: 1) the plaintiff must provide written notice of the circumstances of the claim to the governmental subdivision and the officer or official; and 2) the plaintiff must submit an itemized statement of the relief sought to the appropriate clerk. Wis. Stat. § 893.80(1)(a-b). A plaintiff may also comply with the notice requirement by showing that the governmental entity had actual notice of the claim and was not prejudiced by the claimant's failure to provide the statutory notice. *Thorp v. Town of Lebanon*, 2000 WI 60, ¶ 23, 235 Wis. 2d 610, 612 N.W.2d 59. The notice requirement is intended to

-14-

Case 2:08-cv-00752-JPS   Filed 11/06/09   Page 14 of 16   Document 48

provide municipalities and their officers, officials, and employees the opportunity to "compromise and settle a claim without costly and time-consuming litigation." *City of Racine v. Waste Facility Siting Bd.*, 216 Wis.2d 616, 622, 575 N.W.2d 712, 714 (1998). A court may dismiss such claims under Rule 12(b)(6) when a plaintiff fails to provide the notice required by the statute. *See Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 911 (7th Cir. 1985). There is no indication that Alioto provided the necessary notice or made any attempt to do so. Therefore, his state claims must be dismissed. *See INX Int'l Ink Co. v. Delphi Energy & Engine Mgmt. Sys.*, 943, F. Supp. 993, 998 (E.D. Wis. 1996) (citing *Schwetz v. Employers Insurance of Wausau*, 126 Wis. 2d 32, 35, 374 N.W.2d 241 (Ct. App. 1985); *Smith v. Milwaukee County*, 149 Wis. 2d 934, 940, 440 N.W.2d 360 (1989)).

## CONCLUSION

Alioto lacks good cause for amending his complaint after the deadline because he failed to diligently pursue the addition of § 1983 claims with newly-asserted constitutional bases. Further, Alioto's attempt to amend is futile because his claims would not survive a motion to dismiss. Thus, the court will deny him leave to file his proposed amended complaint. Alioto's remaining claims, those asserted in his original complaint, fail to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Consequently, the court will grant the defendants' motions to dismiss all claims.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for leave to file an amended complaint (Docket #34) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the defendants' motions to dismiss (Docket ## 23 and 26) be and the same are hereby **GRANTED**.

The clerk is ordered to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 6th day of November, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge